IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                                              Civ. No. 23-cv-418

5109 LOMAS DE ATRISCO RD NW,
ALBUQUERQUE, NM 87105,

    *Defendant-in-rem.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America real property constituting proceeds of violations of 21 U.S.C. §§ 841 and 846 and property involved in violations of 18 U.S.C. §§ 1956 and 1957. As alleged herein, the real property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A), and 18 U.S.C. § 981(a)(1)(C).

**DEFENDANT *IN REM***

2. The defendant *in rem* consist of the following real property with improvements thereon and appurtenances thereto:

5109 Lomas De Atrisco Rd. N.W., Albuquerque, NM 87105, more particularly described as:

> Lot numbered Eighty-four (84) in Block numbered Four (4), of the Amended and Supplemental Plat of Blocks 1, 2, 3, 3-A, 3-B, 4, 5, 6, 15, 16, 17, 18, 19, 20, and 21 of THE PALISADES, an addition to the City of Albuquerque, New Mexico, as the same is shown and designated on the map of said addition,

filed in the Office of the County Clerk of Bernalillo County, New Mexico, on June 18, 1949.

Tax ID: 1 011 058 390 243 41438

(hereinafter referred to as "Defendant Real Property").

## JURISDICTION AND VENUE

3. The Defendant Real Property is now, and during the pendency of this action will be, in the jurisdiction of this Court.

4. The United States will post notice of the complaint on the property as required by 18 U.S.C. § 985(c)(1)(B). Posting of notice on the Defendant Real Property establishes *in rem* jurisdiction over the property. The United States will also serve notice of the complaint, along with a copy of the complaint, on the property owner(s) pursuant to 18 U.S.C. § 985(c)(1)(C) or 18 U.S.C. § 985(c)(2).

5. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a), and 1356.

6. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district.

## FACTS

### Drug Trafficking Investigation and Prosecution

7. Since approximately June 2022, agents with the Drug Enforcement Administration (DEA) have been investigating illegal drug trafficking committed by Marcos Cordova (hereinafter "CORDOVA") and others (hereinafter the "SUBJECTS"). During the investigation, agents have learned through interviews of other SUBJECTS, surveillance, and

information obtained in connection with CORDOVA's arrest in December 2022, that CORDOVA is a large-scale drug dealer operating in the Albuquerque area.

8. On December 22, 2022, agents executed a federal search warrant on CORDOVA's vehicle, a 2010 Chevrolet Camaro, in Albuquerque, NM. The 2010 Chevrolet Camaro bears a vehicle identification number (VIN) matching the information for a 2010 Chevrolet Camaro registered in CORDOVA's name.

9. In the trunk of the 2010 Chevrolet Camaro, agents observed a large speaker box. Within the speaker box was a hidden compartment where agents located approximately $13,000 of U.S. currency, as well as approximately four pounds (approximately 1,814 gross grams) of a clear, rock-like substance, which field-tested positive for methamphetamine. Agents also located approximately 18,000 fentanyl pills. These pills field-tested positive for fentanyl and had a gross weight of 2022.7 grams. Agents also found three bundles wrapped in plastic containing a dark, sticky substance, which field-tested positive for heroin, and weighed approximately 130 gross grams. In addition, inside the same speaker box was a digital scale, which is commonly used by drug traffickers for weighing quantities of narcotics.

10. Based on the large quantity of narcotics, cash, and scale recovered from CORDOVA's vehicle, agents believe CORDOVA's principal source of income is illegal drug sales. Since the fentanyl and methamphetamine were found in the hidden compartment with the U.S. Currency, agents believe that the money seized from the vehicle constitutes either illegal drug proceeds or funds intended for use in narcotics transactions.

11. On December 22, 2022, agents executed a federal search warrant at 10531 Duke Avenue SW, Albuquerque, NM, a known residence for CORDOVA. In a bedroom, agents located $4,491.00 of U.S. Currency and a money-counting machine. In a safe in the bathroom of the master bedroom, agents also located $26,120 of U.S. Currency. Agents also located

$1,034.00 of U.S. Currency in CORDOVA's 2019 Toyota Tacoma, registered to him, which was parked in the driveway and was included in the property subject to the search warrant. CORDOVA was arrested for possession with intent to distribute fentanyl on December 22, 2022.

12. On December 23, 2022, CORDOVA was charged by criminal complaint with one count of possession with intent to distribute 400 grams and more of a mixture and substance containing fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and one count of possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). *United States v. Marcos Cordova*, 23-cr-342 MLG, Doc. 1 (D.N.M. Dec. 23, 2022).

13. On March 21, 2023, CORDOVA was indicted on one count of possession with intent to distribute 50 grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and one count of possession with intent to distribute 400 grams and more of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). *United States v. Marcos Cordova*, 23-cr-342 MLG, Doc. 19 (D.N.M. Mar. 21, 2023).

**Analysis of Bank Activity**

14. During this investigation, agents reviewed numerous records documenting the financial activities of CORDOVA and other SUBJECTS. Agents reviewed CORDOVA's Rio Grande Credit Union records. An analysis of the records showed suspicious activity within account number 1000103299, in the sole name of CORDOVA between the dates of July 1, 2022, and August 18, 2022. CORDOVA deposited two official bank checks (cashier's checks) totaling $100,000. The deposited checks were issued from Nusenda Credit Union in the amount of $50,000 each and referenced the name Edward Martinez. CORDOVA also completed three cash deposits totaling $27,649. Following the last cash deposit on August 18, 2022,

CORDOVA withdrew $149,813.60 from his account to purchase a cashier's check in the amount of $149,811.60 made payable to Old Republic Title.  The following table is a summary of the activity within CORDOVA's bank account:

| Date | Beginning Balance | Deposit | Withdrawal | Ending Balance | Transaction Details |
|---|---|---|---|---|---|
| 7/1/2022 | $ 22,513.03 | $ 50,000.00 | | $ 72,513.03 | Cashier's Check - Edward S Martinez |
| 8/5/2022 | $ 73,693.30 | $ 50,000.00 | | $ 123,693.30 | Cashier's Check - Edward S Martinez |
| 8/8/2022 | $ 123,676.61 | $ 2,954.00 | | $ 126,630.61 | Cash Deposit by Marcos Cordova |
| 8/8/2022 | $ 126,630.61 | $ 23,000.00 | | $ 149,630.61 | Cash Deposit by Marcos Cordova |
| 8/18/2022 | $ 149,630.61 | $ 1,695.00 | | $ 151,325.61 | Cash Deposit by Marcos Cordova |
| 8/18/2022 | $ 151,325.61 | | $ 149,813.60 | $ 1,512.01 | Cashier's Check to Old Republic Title |

15.     As part of the investigation, agents also reviewed Nusenda Credit Union records in the name of Edward Martinez (hereafter "Martinez").  An analysis of the records revealed suspicious activity within account number 2244520 in the names of Edward Martinez and Daniella Salazar relating to transactions with CORDOVA's account.  The beginning balance in the Nusenda Bank account was approximately $45,500 on July 1, 2022, when a cash deposit in the amount of $6,000 occurred.  The deposit was followed by a withdrawal in the amount of $50,000 in the form of a cashier's check made payable to Marcos J CORDOVA.

16.     Prior to July 1, 2022, the balance in the account had been approximately $45,000 since at least January 1, 2021.  Between July 11, 2022, and August 5, 2022, several large cash deposits occurred to replenish the account.  Following the last cash deposit in the amount of $12,000 on August 5, 2022, a second cashier's check in the amount of $50,000 made payable to CORDOVA was issued from the Nusenda Bank account.  Beginning on August 29, 2022, through October 20, 2022, several large cash deposits occurred to replenish the account.  From July through October, the cash deposits totaled $83,490.  The following table is a summary of

the activity within Martinez's bank account:

| Date | Beginning Balance | Deposit | Withdrawal | Ending Balance | Transaction Details |
|---|---|---|---|---|---|
| 1/1/2021 | $ 45,066.21 | | | | 2021 Beginning Balance |
| 1/1/2022 | $ 45,033.67 | | | | 2022 Beginning Balance |
| 7/1/2022 | $ 45,518.14 | $ 6,000.00 | | $ 51,518.14 | Cash Deposit |
| 7/1/2022 | $ 51,518.14 | | $ 50,000.00 | $ 1,518.14 | Cashier's Check to Marcos J Cordova |
| 7/11/2022 | $ 2,818.14 | $ 8,000.00 | | $ 10,818.14 | Cash Deposit |
| 7/18/2022 | $ 10,818.14 | $ 8,000.00 | | $ 18,818.14 | Cash Deposit |
| 7/23/2022 | $ 20,018.14 | $ 8,300.00 | | $ 28,318.14 | Cash Deposit |
| 7/30/2022 | $ 28,318.14 | $ 9,000.00 | | $ 37,318.14 | Cash Deposit |
| 8/5/2022 | $ 37,320.01 | $ 12,000.00 | | $ 49,320.01 | Cash Deposit |
| 8/5/2022 | $ 49,320.01 | | $ 49,315.00 | $ 5.01 | Cashier's Check to Marcos J Cordova* |
| 8/29/2022 | $ 1,005.01 | $ 7,800.00 | | $ 8,805.01 | Cash Deposit |
| 8/29/2022 | $ 8,805.01 | $ 200.00 | | $ 9,005.01 | Cash Deposit |
| 9/7/2022 | $ 10,006.01 | $ 7,000.00 | | $ 17,006.01 | Cash Deposit |
| 9/20/2022 | $ 17,006.01 | $ 6,500.00 | | $ 23,506.01 | Cash Deposit |
| 10/20/2022 | $ 24,908.95 | $ 7,990.00 | | $ 32,898.95 | Cash Deposit |

*Martinez also withdrew $685 from a separate checking account to purchase the cashier's check totaling $50,000.

## Interview of Edward Martinez

17.     Agents interviewed Edward Martinez on January 3, 2023, to inquire about his bank account activity from July 2022 through October 2022.  Agents presented him with an official bank check in the amount of $50,000 made payable to CORDOVA.  Martinez acknowledged the check and stated that he was asked by CORDOVA to get him a bank check.  Martinez stated that he worked with CORDOVA in the past, but they do not communicate on a regular basis.  Martinez stated he had been shot in the face a couple years back and had received a large amount of money from an insurance company.  CORDOVA was aware that Martinez had been shot and that he had received money for the incident.  Martinez further stated he had not recently been in contact with CORDOVA until he was asked by CORDOVA to lend him money.  CORDOVA told Martinez that he needed a bank check and asked Martinez if he would provide him a check.  Martinez agreed.  CORDOVA agreed to pay him back.  Martinez was not sure if CORDOVA was buying a house or remodeling a house but recalls that CORDOVA needed the money for something related to a house.  Martinez did not ask CORDOVA further questions.

6

Martinez also stated that Daniella Salazar is his child's mother and had nothing to do with the above transactions.

18.     Martinez stated he felt intimated by CORDOVA, but trusted CORDOVA would pay him back.  Martinez agreed to obtain an official bank check in the amount of $50,000 for CORDOVA, with the understanding that CORDOVA would pay him back.  They did not have an agreed-upon schedule of repayment amounts or timeframe.  Cordova and Martinez agreed that after Martinez provided CORDOVA with the bank check, they would meet at a bank where CORDOVA would give Martinez cash for repayment.  Martinez would then deposit the cash into his bank account.  Martinez stated he was repaid in full when he was asked by CORDOVA to get him another bank check for $50,000 and again, CORDOVA would pay him back.  Martinez provided CORDOVA with the second bank check in the amount of $50,000.  Martinez received cash payments from CORDOVA to deposit into Martinez's account.  Martinez stated he has received all his money back from CORDOVA and has not had any communications with CORDOVA since.

### 5109 Lomas De Atrisco Rd. NW (i.e., the Defendant Real Property)

19.     As part of the investigation, agents obtained records from Old Republic Title Company regarding CORDOVA's purchase of property in Albuquerque, NM.  On August 19, 2022, CORDOVA purchased the property located at 5109 Lomas De Atrisco Road NW, Albuquerque, NM 87120 with a sale price of $145,000.  CORDOVA issued Old Republic Title a cashier's check in the amount $149,811.60 on August 19, 2022, to settle the cash purchase of the Real Property.

20.     A public records search on the Bernalillo County Assessor's property record search portal indicates ownership of the Real Property transferred to Marcos CORDOVA, as he is named as the property owner for tax years 2022 and 2023.

21.     CORDOVA solicited Martinez to obtain two checks for $50,000 each for the purchase of 5109 Lomas De Atrisco Road NW and reimbursed Martinez in cash payments. Agents believe CORDOVA attempted to conceal the source of his illegal proceeds through Martinez's Nusenda bank account # 2244520, then through CORDOVA's Rio Grande Credit Union # 1000103299.  The fact that CORDOVA did not deposit the cash into his account and purchase cashier's checks himself for the purchase of 5109 Lomas De Atrisco Road NW, further illustrates he avoided such transactions going through his account to conceal his illegal drug trafficking proceeds.

22.     The investigation included an attempt to determine what, if any, legitimate income CORDOVA received prior to the purchase of Defendant Real Property.  This included obtaining a work history report from the New Mexico Department of Workforce Solutions, obtaining NM state tax returns, and analyzing bank account records.  For the 2022 calendar year, agents were unable to identify any legitimate income for CORDOVA.  Furthermore, bank accounts associated with CORDOVA did not indicate any regular payroll in 2021 or 2022. CORDOVA did, however, report earning $6,045 in 2019 and $10,392 in 2020 on his NM personal income tax returns.  Agents also conducted surveillance of CORDOVA on several occasions between June 2022 and December 2022 and did not observe any legitimate employment, though they did observe evidence of drug trafficking activity.  Agents' belief that CORDOVA purchased Defendant Real Property largely with drug proceeds is also supported by witness interviews performed and supporting documentation obtained during the investigation. In addition to purchasing Defendant Real Property, CORDOVA is believed to have purchased a 2019 Toyota Tacoma with $36,750 in cash derived from drug trafficking.

23.     On February 14, 2023, the Court issued, a temporary restraining order ("TRO") prohibiting Marcos Cordova and Melissa Padilla, and any person acting in concert with them or

on their behalf, from transferring, dissipating, encumbering, or placing beyond the jurisdiction of the Court the Defendant Real Property. *In Re Pre-Complaint, Pre-Indictment Restraining Order for Real Property*, MR No. 23-146 (D.N.M. Feb. 14, 2023). The TRO is set to expire on May 15, 2023.

### FIRST CLAIM FOR RELIEF

24. The United States incorporates by reference the allegations in paragraphs 1 through 23 as though fully set forth herein.

25. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

26. Defendant Real Property was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

27. The United States incorporates by reference the allegations in paragraphs 1 through 23 as though fully set forth herein.

28. Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture property involved in a transaction or attempted transactions in violation of 18 U.S.C. §§ 1956 or 1957 or property traceable to such property.

29. The Defendant Real Property was involved in transactions or attempted transactions in violation of 18 U.S.C. §§ 1956 and 1957 or is traceable to such transactions and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRD CLAIM FOR RELIEF

30. The United States incorporates by reference the allegations in paragraphs 1 through 23 as though fully set forth herein.

31. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity (as defined in 18 U.S.C. § 1956(c)(7)) or conspiracy to commit such offense.

32. 18 U.S.C. § 1956(c)(7)(A) includes as a "specified unlawful activity" "any act or activity constituting an offense listed in section 1961(1) of this title . . . ."  Title 18 U.S.C. § 1961(1)(D) specifically includes "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

33. The Defendant Real Property constitutes or is derived from proceeds traceable to one or more controlled substance offenses under 21 U.S.C. §§ 841 and 846 and is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks forfeiture of Defendant Real Property to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Property, costs, and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Submitted Electronically*

TAYLOR F. HARTSTEIN
STEPHEN R. KOTZ
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Internal Revenue Service – Criminal Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

Dated:  5/12/2023                                 *Candice Molina* E
                                                                Candice Molina, Special Agent
                                                                Internal Revenue Service – Criminal Investigation